Uh, please call the next case. 4-15-0543, Steve Duntman, President of the Workers' Compensation Commission. Good morning. May it please the Court, Counsel. My name is Philip Erick from Katz Friedman, on behalf of the petitioner Steve Duntman, the appellant in this case. As you can probably tell from the briefs, I was quite surprised by the commission determination in this case. Sort of came out of left field, didn't think that there was a possibility that that decision could have been held. Um, we submit that the commission decision in this case is unprecedented, strained, and not supported by well-established law in Illinois. For the following reasons, we respectfully request that you reverse the commission decision, using the commissioner's, um, dissenting commissioner's rationale and the arbitrator's findings as an award in this case. As you know, there are two issues that have been raised by us. The first one is the standard of review, and the second issue is compensability. If I may, I was the trial lawyer, I know the case very well, I just want to run by some of the facts very quickly. My client developed a work-related blister that's unrebutted. He went home because of the pain within several days and popped the blister at home. He has type 2 non-insulin diabetes, had blood sugar level issues since 1999, but was always within control. He saw Dr. Smith, his doctor, was on medication when he needed to be on medication, and went on with his life. When my client went to pop the blister at home, he used peroxide, he sterilized the needle, he used a cotton swab, he had taken a shower, he did everything right. And I'm sorry, but I don't want you to run out of time, and you've got some issues to get to, and you indicated one of those is standard of review. Yes. So you are advocating a de novo standard of review here, and you've laid out the black-letter law, that if the facts are undisputed and only a single inference can be drawn, then it's to be de novo. But here, what we're talking about is potentially, and your opponent may have something different to say here, but potentially facts are undisputed, perhaps only a single inference of fact may be drawn, but then the determination as to whether or not those undisputed facts and any inferences to be drawn therefrom leads to the conclusion that there was an independent intervening act. Isn't that also, that latter determination, one of which the commission is of deference? In other words, do those facts constitute an independent intervening accident? Just as the commission's decision is to causation, whether an individual is an employee or an independent contractor, any number of conclusions to be made by the commission are entitled to deference. Why shouldn't the commission's decision here in regards to independent intervening accident be entitled to deference? I would say really for three reasons. Number one, it's contrary to Illinois law, as I'd like to get into in a few minutes. But their conclusion, this is an intervening act. I mean, that's been well documented in Vogel, in Tesco, in Minota. There's a whole lot of cases that lay out intervening acts. This kind of scenario where somebody treats at home for a work-related problem has never been even closely, remotely construed as intervening. Car accidents are intervening. Bowling episodes are intervening. So I would say, just in response, Your Honor, that because this scenario, the facts aren't undisputed, the commission laid out specifically what it relied upon, and it was basically all of our facts, in finding this was intervening, that it wouldn't be allowed any higher standard of review. But it could have. If it were to rule against my clients and said Dr. Scioto's opinion is weighed heavier than the treating doctor's opinion, I absolutely agree it would be a manifest way. It would be a question of fact. If the commission would have found that Section 19D applied, there's a case law that says if 19D applies, it's an abuse of discretion standard. The commission could have ruled against us in that respect. They deliberately, I believe, made this a question of law, by the way they wrote out their decision, why it eventually was going to come up to be dealt with here. Well, if they misapplied the law, if they misinterpreted a case, certainly we can look at that from a de novo standpoint. But when we determine notice, or when we are reviewing a case involving notice, when we are reviewing a case involving a rising out of or in the course of, the commission has to make a judgment based on the facts that are presented. And even when the facts presented are undisputed, they still exercise their judgment in determining whether or not the accident arose out of the course of employment. So your position here is saying, no, the commission is not entitled to any deference in making that determination as to whether or not this was an independent intervening accident. And you believe that's supported by the law? Absolutely. I respect the commission. I just think in this case they made it a legal issue. Of course, and here I thought, it's not in my brief, I thought about this while I've been thinking about this case. Here's the major concern. If your Honorable, if this appellate court finds that I'm wrong, this is manifest weight. And you don't find that the decision is against the manifest weight. I have just created, the law in Illinois has just created new law. It has never been found. I did the research. Counsel did the research. Even the commission cited Vogel. There's never been a case where somebody had a work injury, treated it at home, the condition got worse, and that was intervening. I just created bad law for at least my people, my clients. And for that reason, I think this has to be a legal issue. This can't be, unless you're going to say this is the direction of Illinois law, that we're going to say that when people have an injury, he treated it at home to stay at work. That's what's so frustrating. He treated this blister like anyone else, like all of us would have treated the blister. Well, this is not necessarily the only way to approach this problem. You can approach the problem by turning around and saying that it's against the manifest weight of the evidence, because the blister is a cause of his injury, although his popping of the blister with a sterile needle may also have been a cause. So under CISPRO, the only thing you're required is it has to be a cause of the condition, and therefore it's against the manifest weight of the evidence. We're not cutting any new law, and we're not deciding it as a matter of law. I think the matter of law issue becomes problematic, but I did want to pin down something else here. We hear the phrase being thrown out, it didn't constitute an intervening cause. Isn't the standard, and I think it's more than mere words, independent intervening cause? And I think the independent is a very important word here, is it not? Yes, but especially from your perspective here. I mean, arguably there was an intervening act, was there not? I mean, he did pop the blister. It isn't like the condition just went their way on its own. But is it independent in the sense that what he did was unrelated to the condition he found himself in as a result of the accident? So I think the independent is an important factor, is it not? It is, it absolutely is. Look, if the man had gone to a doctor, and the doctor had lanced the blister and he developed an infection, and because of that infection he lost his leg, no one would be here arguing that there is no causal relationship between  The only difference here is he did it rather than a doctor did it. So does the fact that he did it create an independent intervening cause? I would say not. But something that Commissioner Terrell said in his dissent, he also could have kept on working with it, and this blister could have popped in his shoe while he was working. And I also believe, Your Honor, that wouldn't change the fact that this would still be a compensable non-intervening situation at all related to work. Well, we don't know if it popped in his shoe, if it would have gotten infected. Right, but the nature of blisters can always get, that was the natural consequence of blisters is that there's always a possibility that it can be infected. What I was surprised by was the number of cases that you've addressed, Vogel, Pesca, Mendota, that the commission found intervening acts, and it had to be corrected by the appellate court, either based on manifest weight or based on de novo law, that they're not intervening. And the standard truly is if the work injury plays a role in the ultimate condition, it's always been found to be work-related. The but-for test, I believe the commission misapplied the but-for test. They said but for him popping the blister, this infection never would have occurred. That's in the commission decision. I agree with that. But for popping the blister, I believe the record shows, he wouldn't have developed the infection. But that's not the proper standard. The but-for test looks at the initial accident. But for him developing the blister, he never would have developed the infection. That's also true. But for him developing the work-related blister, there would have been no blister to lance. Yes. Yes. So where is that section, and for the life of me, I can't recall where you're actually treating dangerously or something. Section 19D. 19D. Injurious practice, yeah. Why is this a 19D case? The respondent raised that. Caterpillar raised that in front of the arbitrator. Because nothing my client did was unreasonable or injurious or insanitary. According to the brief, and I just need to raise this to defend my client. The employer did not raise independent intervening act. That's correct. They did not raise it. They raised injurious practices. The arbitrator determined, said it's not injurious practice. The commission said 19D doesn't even apply. Yes. Does that make any sense? Well, I hope not. It did not to me. And how can it not be an injurious practice but be an independent intervening act? Isn't that inconsistent? Absolutely. Intervening acts are normally outside events. Car accidents, rolling. That is the category of intervening act. But injurious practice, back to Justice Hoffman's example, and I think Justice Stewart's leading to this. He just bypassed the medical community. Well, I don't think he did anything that was injurious. He popped the blister like he had done in the past. But isn't that the fact that should be determined? Whether or not what he did was actually insanitary and injurious? I mean, he did sterilize the needle. He did use peroxide. I'm just saying we don't have a decision on that, do we? Well, I think we do. I think the arbitrator and the commission, majority in the dissent, and the circuit court had an opportunity to say this was injurious practice. They went out of their way, Your Honor, to say it wasn't. The commission didn't say it was not. They did. They said the commission said 19D does not apply. Yes, because it's not injurious practice. Well. I mean, the commission decision, and it's on pages 2 and 3, actually on page 3 it addresses, the commission finds that a complete reading of 19D establishes it does not apply in this case. And injurious practice. You have to understand why they said it didn't apply. They said it didn't apply because they found the claimant's behavior severed the causal connection, that it was an independent intervening cause. And if it's an independent intervening cause, then in that particular case 19D doesn't apply. But if they're wrong on the question of whether it was an independent intervening cause, then they have to decide the question as to whether his behavior satisfied 19D. They negated it not because it didn't fit in the 19B parameters. They said 19B doesn't apply because there's an intervening cause. So it occurs to me that if we were to accept your argument that they were wrong on the question that it was an independent intervening cause, it has to go back to them to make a determination as to whether his behavior satisfied 19D such that there can be no recovery. I'd be comfortable if you remanded it back. I feel very comfortable what my client did in this case was very appropriate. Unfortunate but very appropriate. I've never read one 19B case that stood for the proposition when somebody has this kind of behavior, when they're doing things right, when they're trying to take care of a situation, that it somehow ends up being an injurious practice type situation. There was a case on injurious practice and remanding it back down to the commission would make a great deal of sense. Those are usually cases where people refuse treatment that's been prescribed by a doctor and so forth. There was no evidence in this record that any medical professional said he did anything wrong, was there? To the contrary. I mean, according to the record, he listened to Dr. Smith with his diabetes. He went on the medication when he needed to go on the medication. He tested himself, the blood sugar levels, on a regular basis. I mean, it's all supported in the record. If you read the employer's position, I mean, they didn't claim that he did anything wrong by popping the blister or anything. They said they had a doctor who said that's not even what caused the infection. That's right, Dr. Chuck. The commission rejected those facts, accepted your facts, but then came up with this independent intervening act business. Yes. Okay, time is up.  You'll have time to reply. May it please the court, Mark Flannery for Respondent Appellee, Caterpillar, Inc. First of all, addressing the standard of review, causation is an issue of fact, as is intervening cause, which is what the commission in fact found. These are fact questions which are subject to the Manifest Weight Standard, unless not only are all the facts undisputed, but as noted, they're subject to only a single inference. The commission found ultimately that the blister did not cause the infection and that a completely new condition was caused when the petitioner chose to lance his blister. Well, let's get back to the question I asked your opponent. Assume that the lancing had been done by a doctor and an infection developed. You wouldn't be standing up here telling me that the amputation would not be causally related to the work accident, would you? Chances are not, although you'd have to look at the particular facts of the case. I mean, I don't think you'd make a cogent argument. So the only difference between this and that circumstance is that he did it as opposed to a doctor doing it. So now the question becomes, what makes that an independent intervening cause as opposed to merely a cause? Well, and that goes, Your Honor, to the questions or the issues that were raised in 2B of our brief. Ultimately, the court has looked at this through this lens in the past. In the Caterpillar case, which we cited in Section 2B of our brief, and also in the Fermi National Accelerator Lab case, which we cited in that section. In fact, in the Fermi Lab case, the court went through in substantial detail, cited Larson for the proposition that it was going to consider whether or not there was intentional or negligent conduct which broke the causal chain, pulling that out of Larson. Ultimately, what the court decided was that gentleman was on crutches. He's trying to get around. He tried to traverse a wet floor in a bathroom, and he went down. And the court held that this was not, and the court said specifically, this was not the support, the sort, rather, of rash undertaking which would break the causal chain. Well, how would this be, the sort of rash undertaking? And again, I'm intrigued by the word independent. Somebody develops a work-related blister. It's the intervening cause, and somebody then decides to lance it. How is that independent of the original work-related blister? Well, in answering the court's first question first, that was outlined in our brief. In other words, you have a constellation of facts here. This is not an ordinary gentleman lancing a blister. Why not? Well, because of the history here which was established by the evidence. The gentleman was a diabetic. Well, lots of people are diabetics. But he was a diabetic who the medical evidence establishes, although his testimony was in contradiction to this, was never really under control in terms of his blood sugars. This is also a gentleman who, in 2009, had a work-related injury to his opposite leg where he contused himself on a railing. I forget exactly what it was. Wound up developing an infection in his opposite leg, and that's what caused him to start treating for the diabetes in the first place. So, in other words, this is a gentleman who has available to him the knowledge that he's a diabetic. He's not controlled. He had just been placed back on metformin immediately before the facts of this case. I know where you're going, but aren't you conflating or combining injurious practice with independent cause? It sounds like you're saying this guy had so many conditions that it was very negligent and very injurious for him to be treating himself. That's different than independent cause. Somebody has a work-related blister, and they pop it. The blister was caused by the work. That's not disputed, is it? No, there is no dispute that the blister was caused by the work. Well, and I'll return again, Your Honor, to the analysis that the court used in the Fermilab case, where the court specifically looked at the quality of the worker's conduct in attempting to traverse a wet floor with the crutches and all that. The court ultimately determined that that wasn't enough. Then why would this be there? Well, because under this constellation of facts, this is a gentleman who had had infections before due to his condition. He knew that that was something that could happen because it had happened. Why isn't that injurious practice rather independent cause? Well, the thing is, Your Honor, ultimately in this case, the commission based its decision, obviously, on intervening cause. Did you argue for that? I did not argue for that. I mean, is it true that the commission just came up with this sua sponte? We argued causation generally, which is pointed out in Section 3 of our brief when we say that there is... But you never argued that this was an independent intervening cause, right? Well, not until the commission made that determination. Well, that's my question. Before the commission, you never argued that. Is that correct? Did not argue. You argued injurious practices. Argued causation and injurious practices. And ultimately, and obviously since that wasn't the finding of the commission, the cases aren't cited in the brief, but the courts I'm sure are aware of them, that talk about an injurious practice basically an intent to injure. I don't think that, and I'm not going to stand here and suggest that Mr. Duntman intended to injure himself. Well, I don't think he would do that. No, that's not what I'm suggesting. And there are at least some cases in the injurious practice area that suggest that that's where you've got to be in order to have an injurious practice. How do you get around, you know, we're going around, how do you get around the but-for argument that a but-for the work-related blister, you wouldn't have had a blister to Lance in the first place? What is your quarrel with that proposition? Well, and I'll go back to what, in that respect, I'll go back to what the commission found, that ultimately the fact that you have a blister does not mean that you're going to get infected. In other words, a blister does not per se cause an infection. And so it was appropriate for the commission to find that this act that the petitioner engaged in was a game changer. And I'd like to, in that respect, go to Section 2A of my brief, where I talk about the central rug and carpet case and the national freight case. The court found independent intervening cause in those cases. However, the court engaged in a different analysis than what we've been talking about. In other words, what the court looked at there, and the reason I cited those cases, they're different. Central rug and carpet involved two injuries to the elbow. National freight involved a back injury, two different subsequent events. And what was the holding there that applies to this case? Well, in those cases, Your Honor, the court ultimately reasoned that there was subsequent intervening cause in both cases. What's most important... Briefly summarize the acts of why in those cases, what were the intervening causes there? Well, in national freight, it was an automobile accident. Well, that's clear. That's independent. It's got nothing to do with the claimant. They can't control an accident. And in central rug and carpet, it was lifting a piano. And the court looked at what are the downstream effects of this and went back to say, is this an intervening cause? In other words, did it change the nature of the condition? Did it change the nature of the medical treatment? Your argument is interesting, but the fact of the matter is you still don't get over my question. How would you claim it's an intervening cause if the infection was caused by Lansing by a physician? That he went to because he had a blister. And in that particular case, you couldn't make a coaching argument that that wouldn't be causally related. And so you're left with a single proposition. It became an independent intervening cause only because he did it. And it occurs to me that, I mean, I don't think that distinction, he did it versus the physician did it, creates a separate intervening cause. It appears as if you're arguing contributory negligence. Well, in your honor, my response to that would be, and this is one basis to find for the respondent in this case, as outlined in section 2B of our brief. My response to the talking about contributory fault is that the court, particularly, especially, and very clearly in Fermi National Accelerator Lab in that case, engaged in precisely that sort of analysis. In other words, the court looked at it based on a citation to chapter 13 of Larson. So what I'm suggesting to the court in terms of looking at the quality of the conduct under all the attendant circumstances is that, yes, according to the reasoning in that case, it actually does make a difference. Well, then, where is the evidentiary material that it was, that he did something wrong by popping the blister? Who testified to that? Well, and again, that's based upon the evidence which is in the medical records in the case which was cited. Well, did he pop the blister and the infection was caused by him lancing the blister? We know that. And your argument seems to be that after he lanced the blister, he got an infection. Therefore, the cause of his infection was some negligent behavior in lancing the blister. You make the bridge between the act and his culpability for committing the act. The act plus the attendant circumstances. What attendant circumstance? He did it? Diabetic, uncontrolled diabetic had just been placed on medication, Your Honor, because his diabetes was not under control. Had previously been infected in the opposite leg. But how is that an independent intervening cause? What was the independent part of this, sir? Well, Your Honor, this is a volitional act. That's what you say in your brief. You call it a volitional and irresponsible act. But going back to what Justice Hoffman asked, is there any criticism in the record, any evidence suggesting that constitutes irresponsibility? Did any doctor indicate that that was contrary to what should have been done? Any evidence that would support this? Well, there's evidence, first of all, and first of all, there's various ER records and so forth and operative reports. The testimony of the IME physician, particularly plaintiff's IME physician, when he talks about the fact that this creates a portal for infection. Indeed, any sort of puncturing or laceration or anything of that nature of the skin can cause a portal for infection. But you've already conceded that a doctor probably would have done the same thing. Well, a doctor would have done the same thing, Your Honor, presumably under sterile conditions. Okay, let me ask another question. You know, suppose he saw the blister there and he did nothing, but he kept walking on it. Sure. And he's walking on it at home or whatever, and the blister pops. Okay. Is that an independent intervening act? No, Your Honor. Then are you going to say, he should have gone to a doctor? He had diabetes, we all know blisters pop, and if they pop they can get infected. So therefore, by his volitional act of not going to a doctor, he caused his own infection. I mean, this all, A goes to B to C, you've got the blister at work. Blisters pop with or without an act by somebody, and it does create a portal for infection. But is that an independent intervening act? Well, Your Honor. No matter how it pops. On the facts that you outlined, standing alone, probably not injurious practice and not an intervening cause. Just on those facts, standing alone. Now, if there were other facts in your hypothetical, such as he could see it was getting discolored, he was having pain, those kind of things, those might change your hypothetical. That all came after the blister, though, after he lanced the blister. Is there any evidence in this record to suggest that based upon this man's condition, that the lancing of the blister was absolutely contraindicated from a medical standpoint? There is none. Well, there is none. I don't think, Your Honor, that any of the medical professionals knew he was going to do that. We're talking about best practices, medical standards, that sort of thing. So, you know, the introduction of a first aid textbook, I suppose. Well, and again, Dr. Koh's testimony, the plaintiff's expert, points out that any laceration, puncture, or anything like that of the skin can create a portal in infection in even a mild diabetic. So in response, I think, to the question you asked, yeah, that evidence would. So it would have been absolutely contraindicated even for a doctor to lance the blister? Under sterile conditions in a hospital environment where proper care is taken, no. I mean, obviously, even diabetics sometimes need unrelated surgery, for example. I mean, they might need their appendix out or whatever the case is, and you've got to do it. But you do it in a hospital with a doctor in a sterile operating room. So my time is up. Thank you for letting me complete my point. Thank you, counsel. Counsel, you may reply. Thank you. Just a couple of responses. Dr. Koh found that my client's condition was mild. His diabetic condition was mild. I just wanted to make sure I mentioned that. It wasn't out of control. I submit to you that if my client went to the doctor, assuming this case was not accepted from the onset, but if it was accepted, I would submit that there's a very strong possibility the company would say, we're not paying those medical bills. They're not reasonable or necessary to treat a doctor for a minor blister. You should have done this yourself at home. I confront those issues all the time in various cases, and that's another argument companies make, that the treatment itself, had he gone to a doctor, could have been found to be not medically necessary or reasonable. And my final point is that, and I didn't get a chance to say this initially, every case that's been cited, including the commission's cite of Vogel, awarded benefits. Every case to the claimant. Every case cited by counsel. Caterpillar case, National Freight, Central Rug, Fermi National Accelerator, all awarded benefits to the claimants. There's not one case that's been presented to you where benefits were not paid as a result and awarded. The two cases that counsel mentions, National Freight and Central Rug, the issue was which employer, which insurance company was responsible. There was no question the claimant was receiving benefits. In the Caterpillar case that counsel referenced, it was a work-related wrist injury, in which he then went to a farm unrelated to work and re-injured his hand on the farm. And just like what we've been talking about today, but for the initial accident, the court found that the ultimate condition wouldn't have occurred. So they awarded benefits in that case. So in every case, and specifically, and I just quoted it, the appellate court in the Caterpillar case cited by Caterpillar states that the employee only needs to show that some act or phase of the employment was a causative factor in the resulting injury. And that's precisely what we've been talking about today. And that's why I believe this case is compensable. And would ask that it be reversed, or at a minimum, be remanded back down to address the injurious practice argument. Okay. Thank you, Counsel Balls, for your arguments in this matter this morning. It will be taken under advisement, a written disposition shall issue.